SHERMAN LAMERE and THEODORE LAMERE,
Plaintiffs in Error

*v.*

STATE OF TENNESSEE, Defendant in Error.

370 S. W. 2d 466.

372 S. W. 2d 190.

(*Knoxville,* September Term, 1963.)

Opinion filed September 11, 1963.

Schoolfield & Taylor, Chattanooga, for plaintiffs in error.

George F. McCanless, Attorney General, Thomas E. Fox, Assistant Attorney General, Nashville, for the State.

Mr. Justice White delivered the opinion of the Court.

The plaintiffs in error, Sherman Lamere and Theodore Lamere, defendants below, were convicted of the offense

of robbery as the same is defined in T.C.A. sec. 39-4207, and were sentenced to serve three years in the state penitentiary. A motion for a new trial was seasonably made and overruled. The appeal therefrom is now under consideration.

The assignments of error, in effect, are: (1) the indictment did not sufficiently describe the papers taken by the defendants; and (2) the file of papers taken by defendants belonged to them, at least they had some right to such file and papers. Therefore, they could not be guilty of robbery under the circumstances.

The facts simply stated are that Mr. Crawford Bean, a member of the Chattanooga Bar, was employed by the defendant, Theodore Lamere, and his wife, to represent them in the transfer of an estate from the State of New York to the State of Tennessee, and to handle all matters in connection therewith under an arrangement whereby he was to receive a percentage of the estate for his services.

During the course of this representation, and on the 26th day of September, 1961, it is charged in the indictment that said defendants "did unlawfully, feloniously and forcibly take from the person of Crawford Bean the following described personal property, to-wit: one file and papers, the same being of value, the personal property of Crawford Bean, Attorney, with intent to convert the same to their own use and to deprive the true owner thereof, by the use of force, violence and the use of a dangerous and deadly weapon, to-wit: pistols, and by putting him, the said Crawford Bean in fear of bodily injury, against the peace and dignity of the State."

We understand the facts are agreed upon to be substantially as set out above.

The defendants denied that they used pistols or that they robbed Mr. Bean. They admit that they did take the file, together with the papers from his office.

This case presents a novel and new situation in Tennessee and some interesting questions of law.

The defendants, two brothers, have been convicted of taking a file and papers, being of value, and personal property of Attorney Bean by robbery. The question presented is whether or not such a file, under the circumstances, may be the subject of larceny by a client who, undoubtedly, had the right to possession of at least some portions of the file provided he first discharged his duty to pay to said attorney a reasonable fee for the services rendered to the client. Clearly, there is no right or possible color of right to possession of the whole file without consent from the attorney and prior to the payment of a reasonable charge for his services. There are cases cited by defendants which indicate that the taking must be without any claim or color of right in order to constitute larceny, but these cases would necessarily be limited to what a reasonably prudent man would consider a reasonable claim or color of right under the circumstances.

■ For the reasons stated in this opinion, we conclude that the defendants could be guilty of larceny of at least a portion of the file and papers which belonged to and were the property of Attorney Bean, and, if this be true, then it would necessarily result that the defendants would be guilty of robbery as charged.

T.C.A. sec. 39-4207 provides, in part, that one who "shall feloniously steal or take by robbery * * * promissory note * * * any book of accounts respecting goods, money or other things; * * * contracts in force; any receipt * * * any instrument of writing whereby any demand, right, or obligation is created, ascertained, increased, extinguished, or diminished; or any other valuable paper writing, shall be punished by imprisonment in the penitentiary not less than three (3) years nor more than fifteen (15) years." The jury found the defendants guilty of the violation of the aforesaid statute and sentenced them to serve the minimum term.

██ The case of *Millner v. State*, 83 Tenn. 179 (1885), seems to answer the questions raised on appeal in this case. In Millner the defendant was indicted for "stealing one railroad ticket from Knoxville, Tennessee to Washington, D. C., of the value of seventeen dollars"; the property of the prosecutor. On appeal the defendant contended, as here, that the description of the ticket alleged to have been stolen, as set out in the indictment was not sufficient and that the indictment was not drawn under Code Section 4693 (now T.C.A. sec. 39-4207), "there being no statute in the state at that time making the stealing of a railroad ticket, as such larceny." 83 Tenn. at 179. In that case the Court said:

"It is conceded that the stealing of a railroad ticket would be indictable under this section, (4693, now T.C.A. 39-4207) but the contention is that the indictment in this case falls short of the requirements of the law." 83 Tenn. at 180.

In the case at bar, the defendants contend that a motion to quash should have been sustained because the

indictment was couched in terms of the general robbery statute (T.C.A. sec. 39-3901) rather than in the terms of T.C.A. sec. 39-4207.

Of course, the indictment in this case could have been more explicit and certain by specifying exactly what papers were contained in the file of Mr. Bean, item by item. Some of our prior decisions seem to turn on such degrees of particularity, but as said by Mr. Justice Chambliss (later Chief Justice), in the case of *State v. Cornellison,* 166 Tenn. 106, 59 S.W.2d 514 (1932), quoting Mr. Justice Sutherland as follows:

> " 'The rigor of old common law rules of criminal pleading has yielded, * * to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet, * * *." ' " 166 Tenn. at 109, 59 S.W.2d at 515.

Mr. Justice Chambliss further noted the courts' "growing inclination * * * to escape from the embarrassment of technicalities that are empty and without reason, and tend to defeat law and right." 166 Tenn. at 110, 59 S.W.2d at 515.

"With particular application to the point herein made of alleged indefiniteness in identification of the denominated objects of the offenses charged, to wit, (1) larceny * * * a distinction is to be taken between the description required in the indictment and that required in the proof; general or class identity being sufficient to be shown in the indictment, while in the proof

individual or specific identification is requisite to conviction." 166 Tenn. at 110, 59 S.W.2d at 515.

"He is on very clear notice that he is accused of having stolen, on a day in February, 1931, from the Tennessee Auto Service Company, one Ford generator armature. Certainly no further notice is needed to enable him to prepare to defend this charge. * * * The rights of the accused are always to be observed, and the courts should be careful to see to it that no injustice is done him, but the time has long passed when offenders may be permitted to escape more 'by the ever easy ear given to exceptions to indictments, than by the manifestation of their innocence,' and when crimes are permitted to go 'unpunished by reason of these unseemly niceties.'" 166 Tenn. at 113-114, 59 S.W.2d at 516.

In the Millner case, supra, it was stated that:

Any instrument or writing, therefore, of value falling within the statute would be the subject of larceny. An indictment in the common law form for larceny, sufficiently describing the instrument or writing would be good, as provided by the Code, section 5119. Or the indictment will be good if it contain a statement of facts constituting the offense in ordinary and concise language, without prolixity or repetition, even where the common law prescribe particular and technical language to describe the offense: * * *." 83 Tenn. at 180.

The Court held in Millner that the railroad ticket was "undoubtedly a valuable writing or instrument under our statute" and an indictment for the larceny of such a ticket in the common law form, describing the ticket

in ordinary and concise language, would be good, and the description in the indictment was sufficient.

In the instant case the indictment was sufficiently certain to give the defendants notice that they were accused of having taken a file and papers from the person of one Crawford Bean by robbery and that the file and papers were of value, and the personal property of said Crawford Bean.

As was stated above, certainly no further notice was needed to enable them to prepare to defend this charge. *State v. Cornellison,* supra.

The file and papers in the instant case were proved to be within the terms of T.C.A. sec. 39-4207.

The trial judge properly charged the jury with respect to T.C.A. sec. 39-4207, and the jury found defendants guilty of a violation thereof. From the record he could have charged also in terms of T.C.A. sec. 39-3901, as amended (Supp. 1962), with respect to the more serious offense of robbery accomplished with the use of a deadly weapon. Instead, he chose a statutory category of aggravated larceny of lesser degree. Of this the defendants should not complain.

We find no error in the record. Affirmed.

### On Petition to Rehear.

A strong and vigorous petition to rehear has been filed herein. It is contended that neither the law nor the facts support the conviction. We believe that the law upon which we based our original conclusion is sufficiently stated in the opinion. The restatement of it would merely emphasize that which we have already held and would serve no purpose.

We have re-examined the record. It shows, from the testimony of Crawford Bean, that the three brothers Lamere came to his office and the two who stand convicted here took from him, at pistol point, the file and papers referred to in the original opinion.

Mr. Bean testified that "Theodore Lamere said, 'Now I'm taking those stocks and bonds and these files.' And I just told him, I said, 'You're taking nothing.' And about that time Sherman whipped out a pistol from under his lap and turned around, * * * and I said, 'You better put that pistol up.' He was kinda shaking. So he said, 'We are going to take it', and he said 'You (referring to Bean) are going to get that file or I'm going to kill you.' "

Under these circumstances the file was turned over to these defendants. In addition to this treatment, Theodore Lamere, at the point of a pistol, commanded Bean to sign a receipt for $800.00 in money or die. His exact words being, according to Bean, "either sign it or die".

The witness, Adrian Norwood, who was in the waiting room of the law office, testified that one of the defendants, as he left the office, had a folder and that he was putting a gun in his pocket. The witness was referring to the defendant Sherman Lamere, according to the record. Theodore Lamere, who was in Army uniform, had a pistol in his hand, according to Norwood.

Elizabeth Robinson, a waitress, was in the front seat of a taxicap intending to go home when the defendant, Sherman Lamere, got on the back seat of the cab with a brown folder in his hand and requested that the cab driver take him to East Ridge, a section in or adjoining the City of Chattanooga. This same witness said that

during the time they were in the cab together she saw a pistol in the lap of Lamere.

The taxicab driver, John Sanderfur, testified that when Lamere got out of the cab,

"I saw a pistol. When he got out he put it in his left rear pocket.

"Q. You had not seen the pistol up to that point?

"A. No sir.

"Q. But as he got out you saw him put the pistol in his pocket?

"A. Yes sir."

All three of the defendants denied the use of weapons of any type in securing the file and papers from Mr. Bean. There was no testimony that Albert Lamere had or used a pistol. The jury found him not guilty. They found the other two defendants guilty and assessed the minimum punishment.

■ It has been the law of this State established over a period of its existence that the credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury which has been approved by the trial court. In this case the evidence of the State and the defense is diametrically opposed on many points. Under these circumstances it is the duty of the jury, under proper instructions, and the instructions in this case are not attacked, to arrive at the truth of the situation, the truth being the justice in the case. *Holt v. State,* 210 Tenn. 188, 198, 357 S.W. 2d 57, 62 (1961).

■ ■ In considering a case on appeal we do so with the presumption that the defendant is guilty as found

by the jury and approved by the court. It must be remembered that the presumption of innocence disappears after a conviction and the defendant is presumed to be guilty here. The jury and trial judge see and hear the witnesses face to face and are in a far better position to determine who is correctly detailing the truth of the matter than are we who see only the record. *Holt v. State,* supra, and other cases cited therein.

■ It is our opinion that the facts of this case support the convictions.

We are of the opinion also that these defendants were earnestly and ably represented on the trial of the case and in this Court. In the petition to rehear filed by additional counsel, another forceful argument has been presented on behalf of these defendants. All that advocates could do has been done for these defendants.

■ There is no evidence in the record of any past misconduct on the part of these defendants and it is with regret that the law and the facts of this case force us to affirm the conviction carrying with it a sentence of three years in the penitentiary. The Legislature has prescribed the punishment for the offense committed here and we are unable to consider a reduction in the sentences.

For the foregoing reasons the petition to rehear is denied.